James Harvey ZASKE, a minor by Cathy Bratsch, his mother and natural Guardian and Cathy Bratsch, Respondents,

v.

**Richard David LEE, Respondent,**

**Robert Thomas Huro, Respondent,**

**County of Kanabec, State of Minnesota, Appellant,**

**Integrity Mutual Insurance Company, Respondent,**

and

**Western National Mutual Insurance Company, Respondent.**

No. C3–02–454.

Court of Appeals of Minnesota.

Oct. 1, 2002.

L. Michael Hall, Francis E. Stephens, L. Michael Hall, P.A., St. Cloud, MN, for respondent Zaske.

Thomas P. Carlson, Jennifer J. Duchscherer, Carlson & Soldo, P.L.L.P., St. Paul, MN, for appellant Kanabec County.

Keith O. Johnson, Wold, Jacobs & Johnson, P.A., Minneapolis, MN; and Michael J. Tomsche, Tomsche, Sonnesyn & Tomsche, P.A., Golden Valley, MN, for respondent Richard Lee.

Clyde Miller, Jennings, DeWan, Miller & Anderson, P.A., Cambridge, MN; and Len Schweich, Askegaard, Robinson & Schweich, P.A., Brainerd, MN, for defendant Robert Huro.

Frank J. Rajkowski, Rajkowski, Hansmeier Ltd., St. Cloud, MN, for defendant Integrity Mutual Insurance Company.

John Varpness, Edina, MN, for defendant Western National Mutual Insurance Company.

Considered and decided by WILLIS, Presiding Judge, STONEBURNER, Judge, and KALITOWSKI, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant county challenges the district court's denial of its motion for summary judgment in which the county argued that statutory and vicarious official immunity protect it from liability for an accident allegedly caused by its failure to replace a stop sign that was knocked down four days before the accident. Because the evidence does not present a genuine issue of material fact about whether appellant had actual notice of the missing sign and because constructive notice constitutes a challenge to the county's discretionary conduct, we reverse.

## FACTS

On Thanksgiving Day, November 25, 1999, an unidentified driver hit the stop sign that controlled westbound traffic on Kanabec County Road 18, where it intersected with Kanabec County Road 11. The driver used a hacksaw to cut the signpost at its base to free his vehicle, which had gotten hung up on the sign. The driver laid the sign in the grassy ditch where it was not visible to motorists. Although several people stopped to help the driver free his vehicle from the signpost, no one reported the damage to the stop sign to appellant Kanabec County.

Respondent James H. Zaske, a minor and passenger in respondent Richard D. Lee's vehicle, was injured in an early-

---

* The Honorable Daniel F. Foley, one of the founding members of this court, who continued to serve by appointment order from the supreme court after his retirement, fully participated in the consideration of this appeal.

Due to Judge Foley's untimely death before the filing of the opinion, Judge Kalitowski has been assigned as a substitute, and now joins the panel in issuing this decision.

morning collision at the intersection of County Roads 18 and 11, on Monday, November 29, 1999. The county, which had not detected the missing stop sign until this second accident occurred, replaced the stop sign immediately after this accident. Respondent Zaske sued the county for its alleged negligence in failing to detect and replace the missing stop sign.

The county encompasses more than 524 square miles and has more than 845 miles of state, county, and township roads. The county is responsible for the installation, maintenance, and repair of approximately 3,500 road signs throughout the county. There is an unwritten but acknowledged policy and practice for reporting and repairing defective or dangerous road conditions, including damaged traffic-control devices, that requires all county highway department employees and sheriff's deputies to look for and immediately report any dangerous or defective road conditions. All department vehicles have radio equipment that can be used to report such conditions, and the sheriff's dispatcher notifies the highway department of any reports it receives. If the department is closed at the time of the report, the county engineer or maintenance foreperson is immediately notified and steps are taken to correct the condition. The policy and procedures have been approved by the county engineer, based on safety, personnel, and budget considerations and, according to the engineer, are consistent with most other Minnesota counties' policies.

It is undisputed that there is no evidence that the county had actual knowledge that the sign was missing before the November 29 accident occurred. Because of the Thanksgiving holiday, sheriff's deputies and dispatch personnel were the only county employees on duty during the period between when the stop sign was cut down and when the November 29 accident occurred. A maximum of two deputies were on duty during each work shift over this period. All other county offices were closed. The highway department's maintenance foreperson did not receive a report that the sign was knocked down until after the accident occurred on November 29. The sheriff's department documents all the reports it receives with respect to traffic-control devices, and the chief deputy's affidavit states that he reviewed the documents and the department did not receive a report concerning the sign. The chief deputy also reviewed the department's radio logs and incident reports, and the patrol logs maintained by the deputies on duty, and none of these indicates that any deputy traveled through the intersection between November 25 and November 29, 1999. Also, the six deputies who worked during this period submitted affidavits. Two are certain they did not travel through this intersection at all during this period. Four do not believe they traveled through the intersection at all during this period and are certain that they did not travel westbound on County Road 18 through the intersection during this period.

The county moved for summary judgment, arguing that it cannot be liable for a dangerous or defective condition of which it had no notice and that, to the extent the claims against the county challenge the policy and procedures for identifying, reporting, and repairing downed signs or other road hazards, the claims are barred by statutory and vicarious official immunity. The district court denied the county's motion for summary judgment, stating only that it found that "there are genuine issues of material facts with regards to Kanabec County * * *." The parties agree that constructive notice is the only possible question of fact. The county argues that submitting the issue of construc-

tive notice to a jury under the facts of this case is equivalent to challenging the county's policy and procedure for detecting and repairing traffic-control devices, which is protected by statutory and vicarious official immunity.

## ISSUE

Did the district court err by denying appellant's summary-judgment motion on the basis a genuine issue of material fact precludes a determination that appellant is immune from claims that challenge its policy and procedure for detecting and repairing traffic-control devices?

## ANALYSIS

 In reviewing summary-judgment appeals, we must determine "whether there are genuine issues of material fact and whether the district court erred in applying the law." *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d 216, 218–19 (Minn.1998). Whether immunity applies is a legal question, reviewed de novo. *Id.* at 219. The party asserting an immunity defense has the burden of demonstrating facts that show it is entitled to immunity. *Gerber v. Neveaux,* 578 N.W.2d 399, 402 (Minn.App.1998), *review denied* (Minn. July 16, 1998). In reviewing a denial of summary judgment based on an immunity claim, we presume the truth of the facts alleged by the nonmoving party. *Burns v. State,* 570 N.W.2d 17, 19 (Minn.App.1997).

Under the Minnesota tort-claims act, a county can be liable for the torts of its officers, agents, and employees. Minn. Stat. § 466.02 (2000); *see* Minn.Stat. § 466.01, subd. 1 (2000) (including counties in definition of municipalities). The statute, however, provides a number of exceptions. Minn.Stat. § 466.03 (2000); *Angell v. Hennepin County Reg'l Rail Auth.,* 578 N.W.2d 343, 346 (Minn.1998).

 In one such exception, the county is immune from liability for claims arising from its performance of or failure to perform a discretionary act, regardless of whether it abused its discretion. Minn. Stat. § 466.03, subd. 6 (2000). A county's conduct is protected by statutory immunity only when the county meets its burden of showing that its conduct was of a policy-making nature, such as that involving a balancing of social, political, or economic considerations. *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn. 1988); *Christensen v. Mower County,* 587 N.W.2d 305, 307 (Minn.App.1998). In contrast, operational-level decisions, which involve the ordinary, day-to-day operations of the government, do not receive immunity. *Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988).

 The first step in analyzing a claim of immunity is to ascertain exactly what governmental conduct is being challenged. *Watson by Hanson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 411 (Minn.1996); *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn.1994). In this case, respondents do not dispute that the county's policy and procedure for detecting problems with traffic signs is protected by discretionary immunity. Instead, respondents argue that they are challenging the deputies' or highway department employees' failure to detect and replace the missing sign. They agree that there is no evidence of actual notice but contend that the county had constructive notice of the missing sign. Respondents rely of the following facts to support their argument:

1. The stop sign was down for a period of four days.

2. Six deputies, two for each shift, were on duty between November 25 and November 29. Deputy Steven Schulz testified in his deposition

that, although the percentage of time on the road versus in the office varied by individual officer, "I would say across the board total, you're probably looking at 60 percent on the road and 40 percent in the office, somewhere in there." The same deputy opined in his deposition that the deputies averaged 125 miles on the roads per shift.[1]

3. County Road 11 is one of the most heavily traveled roads in Kanabec County.

4. The intersection involved is between three and four miles from the county highway-department offices, "about" the same distance from the sheriff's department and, depending on the route taken, only three to four miles from downtown Mora.

5. The person responsible for maintaining the county's traffic signs admitted in his deposition that a stop sign down for a period of four days constitutes a hazard.

6. One highway-department employee lives only three-quarters of a mile from the intersection.

7. The county engineer is not aware of another situation where a stop sign had been down for as long as four days.

8. Citizens had noticed the problem with the stop sign before the November 29 accident.

Respondents contend that failure to replace the stop sign under these circumstances violates a duty that is "absolute, certain and imperative" operational conduct not involving any use of an employee's judgment or discretion and not protected by discretionary immunity.

The county concedes that if there were any evidence that the county had actual knowledge of the missing sign before the November 29 accident, replacement of the sign would involve an operational-level decision not entitled to discretionary immunity. But there is no evidence of actual knowledge. The county asserts that imputation of knowledge through constructive notice in this case is equivalent to challenging the county's policy for inspecting the roads for defective traffic-control devices.

■ In analyzing this issue, we first set out the definition of constructive notice:

"[C]onstructive notice" is, in point of fact, neither notice nor knowledge, and * * * "[t]he term 'constructive' is the mere trademark of a fiction" *resorted to for the promotion of sound policy under certain circumstances* by treating legal rights and interests of parties as though they had actual notice or knowledge.

*Indus. Loan & Thrift Corp. v. Swanson,* 223 Minn. 346, 351–52, 26 N.W.2d 625, 629 (1947) (emphasis added) (citation omitted).

■ The county relies on law-enforcement and highway department employees to watch for and report traffic-device problems encountered, and does not have an inspection schedule or inspection route. Imputation of notice to the county is an assertion that a county employee with reporting responsibilities *should have* inspected this intersection during the holiday period involved. Such an assertion is a direct attack of the county's conduct in formulating its policy to detect problems with traffic-control devices in the county. We agree with the county that imputing knowledge to the county through constructive notice, under these facts, is a direct

---

1. Deputy Schultz's estimates were not limited to what occurred during the holiday period in question or any holiday period.

challenge to the county's policy for discovering problems with traffic-control devices.

 We also agree that the policy is entitled to statutory immunity under Minn. Stat. § 466.03, subd. 6, because it involved a balancing of budgetary, safety, and personnel considerations. Respondents assert that a jury could readily infer from the circumstantial evidence that a patrol officer (or county highway employee) drove by the downed sign without discovering its condition and requesting replacement, constituting negligence at the operational level. We disagree. While a jury may rely on circumstantial evidence so long as the inferences are reasonably justified by the proof in the case, a jury may not rely on speculation or conjecture. *Illinois Farmers Ins. Co. v. Brekke Fireplace Shoppe, Inc.*, 495 N.W.2d 216, 220–21 (Minn.App.1993). The inference respondents argue is not reasonably justified by the evidence and would call for the jury to engage in speculation and conjecture. Respondents' challenge is to the county's policy of detection, for which the county is protected by statutory discretionary immunity. Because we have determined that the detection policy is entitled to statutory discretionary immunity, we decline to address the county's alternative arguments that it is immune by operation of either Minn.Stat. § 466.03, subd. 5 (2000), or vicarious official immunity.

## DECISION

The county is immune by operation of statutory discretionary immunity from liability based on its policy for detecting problems with traffic signs. The evidence is insufficient to create a genuine issue of material fact about whether a county employee with a duty to detect the missing stop sign drove through the intersection and failed to detect or report the missing

sign. The district court erred by denying the county's summary-judgment motion.

**Reversed.**