*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1831**

Christine L. Rathbun,
Respondent,

vs.

Fillmore County,
Appellant.

**Filed June 17, 2024**
**Affirmed**
**Frisch, Judge**

Fillmore County District Court
File No. 23-CV-22-296

Andrew L. Davick, Derek I. Stewart, Meshbesher & Spence, Ltd., Rochester, Minnesota
(for respondent)

Kenneth H. Bayliss, Elle M. Lannon, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for
appellant)

Considered and decided by Larkin, Presiding Judge; Bratvold, Judge; and

Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant-county challenges the district court's summary-judgment determination

that the county is not immune from a personal-injury suit arising out of the county's

allegedly negligent failure to maintain a road or warn of a roadway hazard.  Because the

county did not meet its burden to establish it is immune from suit based on vicarious official immunity or statutory immunity as a matter of law, we affirm.

## FACTS

The relevant facts in this appeal are undisputed. On June 8, 2020, respondent Christine L. Rathbun stepped into a hole and fell while walking on County State-Aid Highway 8 (Highway 8) in Fillmore County. Because Highway 8 does not have a sidewalk, Rathbun was walking on the road near the curb. The hole measured approximately two feet by one foot and was not marked as a hazard.

Rathbun sued appellant Fillmore County for negligence, alleging that the county breached its duty to inspect and maintain Highway 8 and breached its duty to warn of a dangerous condition. The county moved for summary judgment, arguing that it (1) did not have actual or constructive notice of the hole, (2) was entitled to statutory immunity under Minn. Stat. § 466.03 (2022), and (3) was entitled to vicarious common-law official immunity. The county submitted deposition testimony from county engineer Ronald Gregg and county maintenance superintendent Brent Kohn, both of whom explained their duties relating to county roadway maintenance. Both Gregg and Kohn discussed the county's practice of not inspecting for roadway defects and the county's response to complaints of roadway defects. The county does not keep records of complaints or its response to such complaints. Kohn typically responds to complaints by dispatching a team to assess and potentially repair reported defects.

The county submitted a declaration from Gregg in which he set forth county policy regarding general schedules for road repair and reconstruction and noted fiscal constraints

2

on the county resulting in "[o]bsolete roads requir[ing] more patching, pothole filling and other maintenance as they age." Gregg also noted the county's practice of prioritizing road repairs in driving lanes. Finally, Gregg averred that after Rathbun commenced this action, he inspected the hole at issue and confirmed that it is "not the type of condition that the County would repair prior to roadway reconstruction." After a hearing, the district court denied the county's motion for summary judgment.

The county appeals.

## DECISION

The county argues that the district court erred by concluding that Rathbun's claims against the county were not barred by statutory immunity or vicarious official immunity as matters of law. Summary judgment is appropriate if the moving party shows that "there is no genuine issue as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. "[D]enial of a motion for summary judgment is not ordinarily appealable, [but] an exception to this rule exists when the denial of summary judgment is based on rejection of a statutory or official immunity defense." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). We review de novo whether immunity applies to the relevant governmental entity and its officials. *Shariss v. City of Bloomington*, 852 N.W.2d 278, 281, 284 (Minn. App. 2014) (applying de novo review to an assertion of vicarious official immunity); *Conlin v. City of Saint Paul*, 605 N.W.2d 396, 400 (Minn. 2000) (applying de novo review to an assertion of statutory immunity). And the party asserting immunity bears the burden of proving it is

entitled to that immunity. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997). We address each assertion of immunity in turn.

## I. The district court did not err in determining that the county failed to meet its burden to prove that it is entitled to vicarious official immunity.

The county argues that the district court erred in concluding that the record did not establish that the county was entitled to vicarious official immunity. Common-law official immunity prevents a suit for damages against a public official when the alleged harm resulted from actions by the public official requiring their judgment or discretion. *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006). This protection may extend to a government entity through vicarious official immunity, even where an individual government official is not named in the suit. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316-17 (Minn. 1998) (noting that to deny a government employer vicarious immunity where the acting official was not named in the suit would allow plaintiffs to defeat immunity by declining to name the official as a defendant).

To determine whether an individual is entitled to official immunity, we identify the "the conduct at issue" and determine whether this conduct "is discretionary or ministerial." *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). A ministerial duty compels a public official to take a certain action under a given set of circumstances. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006); *see also Wiederholt*, 581 N.W.2d at 315 (defining ministerial duties as those with no room for discretion and that are "absolute, certain, and imperative" (quotation omitted)). A duty is discretionary "if it involves more individual professional judgment that necessarily reflects the professional goal and factors

of a situation." *Mumm*, 708 N.W.2d at 490-91 (quotation omitted). If a public official's conduct is discretionary, they are protected by official immunity provided they did not act willfully or maliciously. *See Schroeder*, 708 N.W.2d at 505.

In her complaint, Rathbun challenges the county's conduct in inspecting and maintaining Highway 8.[1] The county argues that Gregg, the county engineer, is entitled to official immunity—and the county vicarious official immunity—because he exercised discretion in decisions regarding maintenance and inspection of Highway 8. We disagree that the evidence presented by the county establishes that it is entitled to vicarious official immunity.

The county presented no evidence that Gregg or any other county employee made any decision regarding the road or pothole at issue. The record reflects that the county was unaware of the defect in Highway 8, did not inspect that area for such defects, and according to county practice, would not have done so unless a citizen complained about the defect. Without any evidence showing that a county official engaged in any conduct or made any decision with respect to the road or hazard at issue, the county failed to meet its burden to show that it engaged in a discretionary act entitled to immunity.

---

[1] We note that the complaint sets forth two negligence theories—the county's failure to properly inspect and maintain Highway 8 and its failure to warn of a dangerous condition. Because the record does not reflect that the county had actual notice of the hole, we construe Rathbun's failure-to-warn claim as a challenge to the county's policy not to inspect roads to discover potential hazards and thus within the scope of her inspection-and-maintenance claim. *See Zaske ex rel. Bratsch v. Lee*, 651 N.W.2d 527, 532-33 (Minn. App. 2002) (construing a claim imputing notice to a county as a claim that a stop sign should have been inspected and therefore a "direct attack" on a county inspection policy), *rev. denied* (Minn. Dec. 17, 2002).

Even if a county official were to have made a decision about Highway 8 or the hole, the undisputed record submitted by the county reflects that such a decision would not involve the exercise of any discretion by a county official. In Gregg's declaration, he attested that, after Rathbun's fall, he personally inspected the hole in Highway 8 and found it to be "not the type of condition that the County would repair prior to roadway reconstruction." Stated differently, the county engineer's explanation suggests that any response by the county to the hole would have been predetermined and thus require no exercise of individual professional judgment by a county official. *Mumm*, 708 N.W.2d at 490.

The county argues that it is entitled to vicarious official immunity even if we conclude that its acts are ministerial because its employees carried out an act according to policy and the adoption of the policy itself was discretionary. *See Anderson*, 678 N.W.2d at 661 (concluding that official immunity applied to a teacher whose action was ministerial but enactment of the policy making such a decision ministerial "involved the exercise of the staff's professional judgment as educators and woodworkers"). Even assuming that the county has adopted a "policy," the county is not entitled to such immunity here because it presented no evidence that the adoption of its practices involved the exercise of any professional judgment. The county presented no evidence as to how Gregg or any other official made any decision that resulted in the adoption of its practices. It is true that Gregg attested that "budgetary constraints have compelled [him] to make difficult decisions about the allocation of resources between competing interests," but he did not assert that such decision-making led to the county's practices. And although Gregg identified the county's

practices, including that "[t]he County has a practice of filling potholes," "does not have a written policy" requiring "surveillance of roadways for defects," and that his department would have followed "[t]he County's standard practice and procedure" regarding repairs, none of these assertions evidence discretionary decision-making by county officials.[2]

Finally, even if Gregg were entitled to official immunity, the county has not met its burden to demonstrate that it is vicariously immune from suit. The purpose of vicarious official immunity is to protect government officials from having to second-guess their decisions for fear of exposing their employer to liability. *Anderson*, 678 N.W.2d at 664. Vicarious immunity is generally afforded to municipal employers if the employee is entitled to official immunity for their actions. *Sletten v. Ramsey County*, 675 N.W.2d 291, 300-01 (Minn. 2004). But in limited circumstances, a government entity can be held liable despite the public official being immune. *See S.W. v. Spring Lake Park Sch. Dist. No. 16*, 592 N.W.2d 870, 877 (Minn. App. 1999) (refusing to extend vicarious immunity to school district despite the discretionary actions of school employees because the district failed to design a security policy that governed the employees' responsibilities to protect children from assault), *aff'd*, 606 N.W.2d 61 (Minn. 2000); *Sletten*, 675 N.W.2d at 306 (declining to extend vicarious immunity to a county for the mixed ministerial and discretionary

---

[2] To the extent that the county argues that it is entitled to vicarious official immunity through the existence of a policy or practice alone, this argument essentially suggests that the county is entitled to sovereign immunity—a common-law doctrine preventing lawsuits against the state and its subdivisions without its consent. But this doctrine does not apply to ministerial conduct of subdivisions of the state. *Spanel v. Mounds View Sch. Dist. No. 621*, 118 N.W.2d 795, 803 (Minn. 1962); *see generally Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 717-18 (Minn. 1988) (detailing history of sovereign immunity in Minnesota).

actions of its workers where the lack of immunity "would not deter" the workers' performance but would encourage compliance with "governmental permits, operating requirements, and facility design limitations"). "Ultimately, the extension of vicarious official immunity is a policy question for the court." *Schroeder*, 708 N.W.2d at 508.

The county offers no principled basis as to why it is entitled to vicarious official immunity. It instead simply claims that "there is no policy reason that official immunity should not be extended to the County itself." This assertion does not satisfy the county's affirmative burden to demonstrate its entitlement to immunity. *See Rehn*, 557 N.W.2d at 333 (noting that a defendant asserting immunity "bears the burden of proving [it] fits within the scope of the immunity"). The county does not argue that the absence of immunity could hinder the performance of county employees. *See Schroeder*, 708 N.W.2d at 508 (extending vicarious official immunity to the county because its staff used "collective knowledge and experience" to craft policy, and failing to grant immunity would discourage the county staff from doing so in the future). Nor does the county argue the absence of immunity would "create a disincentive to use collective wisdom" in creating protocols and policies. *See Anderson*, 678 N.W.2d at 664-65 (extending vicarious immunity to a school to avoid bringing "stifling attention" to the actions of individual teachers (quotation omitted)). Because the county failed to satisfy its burden to demonstrate its entitlement to vicarious official immunity, we cannot conclude that the county is immune from Rathbun's suit on official immunity grounds.

**II.    The district court did not err in determining that the county failed to meet its burden to prove that it is entitled to statutory immunity.**

The county contends that the district court erred in concluding that the county was not entitled to statutory immunity. Generally, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02 (2022); *see also Conlin*, 605 N.W.2d at 400. But political subdivisions are immune from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6. This exception for discretionary functions is interpreted narrowly. *Conlin*, 605 N.W.2d at 400; *see also Cairl v. State*, 323 N.W.2d 20, 23 (Minn. 1982) (noting that statutory immunity is narrowly construed because it is an exception to the general rule of governmental liability).

"The purpose of statutory immunity is to protect the legislative and executive branches from judicial second-guessing of certain policy-making activities through the medium of tort actions." *Schroeder*, 708 N.W.2d at 503. "Statutory immunity is extended when there has been a planning-level decision; that is, social, political, or economic considerations have been evaluated and weighed as part of the decision-making process." *Id.* at 504. "Statutory immunity does not extend to operational-level decisions, those involving day-to-day operations of government, the application of scientific and technical skills, or the exercise of professional judgment." *Id.* The government must "produce[] evidence that the conduct was of a policy-making nature." *Id.*

9

The county argues that it produced evidence establishing that its decisions regarding the maintenance and repair of Highway 8 "are policy level decisions requiring consideration of social, economic, and political factors." The county relies on Gregg's declaration in which he details county practices regarding roadway repair including that "[t]he County has a practice of filling potholes," "does not have a written policy" requiring inspection of roadways for defects, and that his department would have followed "[t]he County's standard practice and procedure." Gregg generally noted the effect of budgetary constraints in his decision-making regarding roadway repair and reconstruction schedules, but he did not assert that such decision-making resulted in any county practice.

The county failed to meet its burden to show that these decisions were of a policy-making nature and the result of "the balancing of social, economic, or political considerations." *Schroeder*, 708 N.W.2d at 505. The evidence submitted by the county is too conclusory to satisfy the county's burden that it is entitled to immunity. *See Conlin*, 605 N.W.2d at 399, 402-03 (determining that affidavits detailing a city's decision-making process were conclusory where they "merely identif[ied] generalized concerns and seemingly parrot[ed] back language for our case law without incorporating specific facts demonstrating that a decision was in fact made"). The county submitted no evidence as to its decision-making process, planning-level considerations, or whether or how county officials weighed policy considerations. The record lacks any memoranda, letters, or meeting minutes, for example, examining the county's decisions, discussing alternatives, or reflecting an assessment of the cost of enacting its procedures as compared to other options. *See Schroeder*, 708 N.W.2d at 505. And the information offered by the county

10

does not include a system of rating roads for suitability or describe a committee decision-making process like what we concluded demonstrated a balancing of competing political, social, and economic factors in *Minder v. Anoka County*, 677 N.W.2d 479, 484-85 (Minn. App. 2004).

Because the county produced no evidence as to any policy considerations and procedures that guided the county's actions, it did not meet its burden to show its entitlement to statutory discretionary immunity. *See Rehn*, 557 N.W.2d at 333 (noting that a defendant relying on an immunity "bears the burden of proving [it] fits within the scope of the immunity").

The district court did not err in denying the county's motion for summary judgment on vicarious official immunity or statutory immunity grounds.[3]

**Affirmed.**

---

[3] We understand that this matter is ongoing in the district court. Our opinion regarding the county's entitlement to immunity is based on the limited record presented to the district court at summary judgment. We express no opinion as to whether the county may be able to later produce evidence in satisfaction of its burden to establish an entitlement to immunity.